IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00183-WJM-NYW

DAVID LUCK,

    Plaintiff,

v.

SERGEANT SMITH,
CO BRUMMOND,
LIEUTENANT GRIMES,
CAPTAIN YATES,
CAPTAIN MARTINEZ,
CO LOPEZ,
CO NEVINS,
CO FORESTALL,
SERGEANT CORBIN,
MENTAL HEALTH PROVIDER TOEWS, and
MAJOR BUTCHER,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on two pending motions:

    (1)    Defendants Sergeant Smith, CO Brummond, Captain Yates, Captain Martinez, CO Nevins, CO Forestall, Sergeant Corbin, Mental Health Provider Toews, Major Butcher, Lieutenant Grimes, and CO Lopez's (collectively, "Defendants")[1] Motion for Partial Dismissal of Amended Complaint (Doc # 6) ("Partial Motion to Dismiss") [#24, filed May 1, 2017]; and

---

[1] Initially, this motion did not include Lieutenant Grimes or CO Lopez; however, this court granted Lieutenant Grimes's Motion to Join CDOC Defendants' Motion for Partial Dismissal of Amended Complaint (Doc #24), *see* [#33; #35], and hereby GRANTS CO Lopez's request to join the CDOC Defendants' Motion for Partial Dismissal [#40].

(2) Defendant CO Lopez's Combined Motion to Join CDOC Defendants' Motion for Partial Dismissal of Amended Complaint (Doc #24) and Motion to Dismiss Eight Amendment Claim (the "Lopez Motion to Dismiss") [#40, filed June 21, 2017].

The undersigned considers the motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 1, 2017 [#10], and the memoranda dated May 8, 2017 [#25] and June 21, 2017 [#42]. This court concludes that oral argument will not materially assist in the resolution of these motions. Accordingly, upon careful review of the motions and associated briefing, the entire case file, and the applicable law, I respectfully RECOMMEND that the Partial Motion to Dismiss be GRANTED and the Lopez Motion to Dismiss be GRANTED.

## BACKGROUND

Plaintiff David Luck ("Plaintiff" or "Mr. Luck") is currently incarcerated at the Limon Correctional Facility ("LCF"). [#1 at 2]. Plaintiff alleges that Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights by placing him in Unit-2, a unit allegedly hostile towards member of the LBGTQ community, which led to an inmate assaulting Plaintiff for being homosexual. [#6]. Plaintiff alleges that he informed Defendants that his placement in Unit-2 posed serious risks to his safety, because Unit-2 housed many white supremacists that would assault him because of his sexual orientation. *See* [*id.* at ¶¶ 1, 3, 5–7, 13–14]. Despite his warnings, Defendants moved Plaintiff to Unit-2, and assigned him to a cell with an associate of white supremacists. [*Id.* at ¶¶ 6–7].

Plaintiff continues that he informed Defendants Butcher and Yates that "on returning from recreation I had been approached by an inmate who told me that If [sic] I didn't leave Unit-2 that I would be smashed out ([i.e.,] hurt very badly)." [*Id.* at ¶¶ 13–14]. Against protocol, Plaintiff was placed in an empty double-cell because he was a member of the LBGTQ

2

community. [*Id.*]. Then, on or about November 29, 2016, one day after his transfer to Unit-2, an inmate entered Mr. Luck's cell and assaulted him. [*Id.* at ¶ 15]. Plaintiff alleges that he suffered black eyes, bruises, welts, and a bloody nose because of the assault, and that he now suffers from severe migraines, "random gushing nose bleeds", aches and pains in his neck, as well as mental and emotional disorders. [*Id.* at ¶¶ 15–17].

Following the assault, Plaintiff was transferred to the Restrictive Housing Unit where he stayed for one-day, pending an investigation into the assault. [*Id.* at ¶ 15]. Plaintiff was then placed back in general population (Unit-3). [*Id.*]. Plaintiff alleges that, upon moving to Unit-3, he was again assigned to a cell with a white supremacist. [*Id.* at ¶ 15].

On or about December 22, 2016, Mr. Luck filed an informal grievance against Defendants, because his "constitutional rights have violated [sic] by malicious intent, and [his] life continues to be placed in danger by the policy breakers who continue to retaliate against me for exercising my rights to liberty without affording me any due process." [*Id.*]. Plaintiff then filed a step-one grievance based on his continued placement with white supremacists and "affiliated members of multiple security threat groups" in violation of his Eighth Amendment rights. [*Id.*]. Defendant Yates denied the informal grievance, because Mr. Luck had not brought "ant [sic] custody issues to the attention of the staff while being assigned to living unit-3." [*Id.* at ¶ 16].

Plaintiff then initiated this action by filing his *pro se*[2] prisoner complaint on January 19, 2017. [#1]. Pursuant to the Order of the Honorable Gordon P. Gallagher, Plaintiff filed his

---

[2] Because Plaintiff proceeds *pro se*, this court liberally construes his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, the court cannot act as an advocate, even for a *pro se* litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir.2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

Amended Complaint on January 20, 2017, the operative complaint in this matter. *See* [#5; #6]. Defendants filed the Partial Motion to Dismiss and a Partial Answer on May 1, 2017. *See* [#23; #24]. Plaintiff filed his Response to the Partial Motion to Dismiss[3] as well as a Response to Defendants' Partial Answer on June 7, 2017. *See* [#36; #37]. On June 21, 2017, Defendants filed the Lopez Motion to Dismiss. [#40]. Defendants also filed a Reply to the Partial Motion to Dismiss on July 27, 2017. [#49].

During the June 9, 2017 Status Conference, Plaintiff indicated that he wished to amend and/or clarify his complaint a second time. At the Conference, Defendants acknowledged that their pending motions to dismiss would likely be mooted by a Second Amended Complaint. Nevertheless, counsel for Defendants indicated that they had no objection to further amendment, consistent with the additional allegations reflected in Mr. Luck's Response to the collective Defendants' Partial Motion to Dismiss [#37], so long as they retained the right to answer or otherwise respond to a Second Amended Complaint. Thus, this court directed Plaintiff to file a Second Amended Complaint, incorporating all potential claims against Defendants, on or before June 30, 2017. *See* [#38]. Plaintiff then sought, and received, two extensions of time to file his Second Amended Complaint, which was due on or before August 21, 2017. *See* [#45; #47; #50; #52]. Plaintiff has not filed his Second Amended Complaint, and has not responded to the Lopez Motion to Dismiss. Given the amount of time that has been afforded to Plaintiff to comply with the court's prior order, this court concludes that a Second Amended Complaint is not forthcoming in a timely fashion, and it is appropriate to move forward with a Recommendation on the pending motions at this time, even without a response from Plaintiff with respect to the Lopez Motion to Dismiss. *See* D.C.COLO.LCivR 7.1(d).

---

[3] All Defendants move to dismiss Plaintiff's First, Fourth, and Fourteenth Amendment claims, but do not (excluding Defendant Lopez) move to dismiss Plaintiff's Eighth Amendment failure to protect claim, and have filed an Answer as to that claim only. *See* [#23].

## LEGAL STANDARDS

### I.  Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall*, 935 F.2d at 1110 (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### II.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690

(10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). The doctrine applies to government officials in their individual, as opposed to official, capacity, and does not attach to government entities. *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).

When, as here, Defendants move to dismiss Plaintiff's § 1983 claims on the basis of qualified immunity, "the plaintiff must allege sufficient facts that show—when taken as true—the defendant[s] plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citation omitted). Mr. Luck's Amended Complaint need not contain all the necessary factual allegations to sustain a conclusion that Defendants violated clearly established law. *See Robbins*, 519 F.3d at 1249 (recognizing that such a heightened pleading standard is not required) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). However, the Complaint must satisfy the minimum pleading requirements, as articulated in *Twombly* and discussed above. *Id.*

## ANALYSIS

### I.  First Amendment Retaliation

It is well settled that prison officials may not retaliate against or harass an inmate based on the inmate's exercise of his constitutional rights, including the filing of grievances. *See Fogle v. Peirson*, 435 F.3d 1252, 1263–64 (10th Cir. 2006); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). To state a plausible unlawful retaliation claim under the First Amendment, Mr. Luck must allege: (1) he engaged in a constitutionally protected activity; (2) Defendants' caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) his exercise of the constitutionally protected activity substantially motivated Defendants' adverse action. *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007). Mr. Luck must "allege *specific facts* showing retaliation because of the exercise of [his]

constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (emphasis in original) (internal quotation marks and citation omitted).

Here, Defendants move to dismiss any alleged First Amendment retaliation claim, because Plaintiff's Amended Complaint fails to identify who retaliated against him, how the individual(s) retaliated against him, or that his protected activity substantially motivated their actions. [#24 at 5]. Without such allegations, Defendants have no notice of the alleged misconduct. [*Id.*]. Further, Defendants contend that the absence of a First Amendment violation entitles them to qualified immunity. [#24 at 8–9]. I respectfully agree.

The Amended Complaint makes only one reference of retaliation: "My constitutional rights have violated [sic] by malicious intent, and my life continues to be placed in danger by the policy breakers who continue to retaliate against me for exercising my rights to liberty without affording me due process." [#6 at ¶ 15]. It is unclear which Defendant(s) allegedly retaliated against Plaintiff, when such retaliation occurred, or that Plaintiff's protected activities motivated the retaliation. *See Peterson*, 149 F.3d at 1144 (explaining that a prisoner must set forth specific facts to support a retaliation claim); *cf. Hall*, 935 F.2d at 1110 (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). In his Response, Plaintiff argues that Defendants Yates and Butcher denied his grievances when they should have recused themselves, knowing that the grievances concerned their actions in this matter. [#37 at ¶¶ 6–7]. Further, Plaintiff contends that Defendant Butcher and Yates discriminated against and subjected Plaintiff to searches in violation of LCF Policy, because of his grievances and for being a member of the LBGTQ community. [*Id.* at ¶¶ 4–5, 8–9, 18]. However, these allegations appear for the first time in Plaintiff's Response, and Mr. Luck may not amend his complaint via his Response. *See In re Qwest Communications Int'l., Inc.*, 396 F.

Supp. 2d 1178, 1203 (D. Colo. 2004). Despite several extensions of time to file his Second Amended Complaint to include all the operative facts and claims, Plaintiff has failed to do so. *See Goldenhersh v. Aurora Loan Servs.*, LLC, No. 10-CV-01936-MSK-BNB, 2010 WL 5313803, at *1 (D. Colo. Dec. 16, 2010) (noting that a plaintiff may not craft an operative pleading by weaving various documents together, but that an amended complaint must include all arguments against all defendants). Accordingly, this court concludes that in the operative pleading, Plaintiff fails to allege a First Amendment retaliation claim, and that Defendants are entitled to qualified immunity for this reason. Thus, I respectfully RECOMMEND that Plaintiff's First Amendment retaliation claim be DISMISSED.

## II. Fourth Amendment Excessive Force

"Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system—and each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). As relevant here, claims of excessive force involving convicted prisoners arise under the Eighth Amendment cruel and unusual punishment clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). The inquiry focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Serna v. Colorado Dep't of Corrs.*, 455 F.3d 1146, 1152 (10th Cir. 2006) (internal quotation marks and citation omitted). Mr. Luck must therefore allege (1) the force used was objectively harmful such that it violated his constitutional rights, and (2) Defendants acted with a sufficiently culpable state of mind. *See Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

Defendants move to dismiss Plaintiff's Fourth Amendment claim because the Eighth Amendment affords Plaintiff the appropriate remedy, not the Fourth Amendment, and Plaintiff

already asserts an Eighth Amendment claim. *See* [#24 at 5–6]. Thus, because Plaintiff fails to plead a cognizable constitutional violation, Defendants assert that they are entitled to qualified immunity. [*Id.* at 8–9].

Plaintiff responds that Defendants, specifically Corbin and Lopez, subjected Plaintiff to several unlawful and harassing searches of his cell "after Plaintiff started voicing his opinion about harassments, and discriminatory policies." [#37 at ¶ 8]. Again, this allegation appears for the first time in Plaintiff's Response, and this court does not consider it for purposes of the Partial Motion to Dismiss.

Nonetheless, regarding any excessive force claim, the Amended Complaint alleges that Defendant Yates ordered Defendants Forestall and Nevins to drag Plaintiff back into his Unit-2 cell after Plaintiff refused to re-enter for safety reasons; that someone grabbed Plaintiff by the hair when forcing him back to his Unit-2 cell; that Defendant Yates pointed a Taser at him; and that Defendants Forestall and Nevins said that they would cuff him or tackle then cuff him to force him to Unit-2 should he resist.[4] [#6 at ¶¶ 6–9]. While Defendants are correct that the Eighth Amendment governs Plaintiff's potential excessive force claim, this court concludes that this reason alone does not necessitate dismissal of such a claim. However, based on the allegations in the Amended Complaint, this court concludes that Defendants Yates, Forestall, and Nevins are entitled to qualified immunity [#24 at 8], as Plaintiff fails to allege that these Defendants undertook such actions "maliciously and sadistically to cause harm." *Serna*, 455 F.3d at 1152. Rather, the Amended Complaint explains that Defendants reacted in this manner only after Plaintiff "went limp and tried to impede the officers from dragging me into the cell[.]" Therefore, this court respectfully RECOMMENDS that Plaintiff's excessive force claim (under

---

[4] There are no factual allegations regarding the other named Defendants; thus, I RECOMMEND dismissal of any excessive force claim sought to be alleged against these other Defendants. *See Robbins*, 519 F.3d at 1250 (explaining that a complaint must make clear who did what to whom).

the Fourth or Eighth Amendment) be DISMISSED, as Defendants Yates, Forestall, and Nevins are entitled to qualified immunity.

## III.  Fourteenth Amendment Procedural Due Process

In determining whether Defendants violated Mr. Luck's Due Process rights, the Court must determine: "(1) did [Plaintiff] possess a protected interest such that the due process protections were applicable; and, if so, then (2) was [Plaintiff] afforded an appropriate level of process." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)).  However, prisoners retain only a "narrow range of protected liberty interests." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quotations and citation omitted); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").  Accordingly, a protected liberty interest arises only from a transfer to harsher conditions of confinement when the inmate faces an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (internal quotations and citations omitted).

Defendants move to dismiss any alleged Fourteenth Amendment due process claim for several reasons.  First, the Amended Complaint fails to allege what purported liberty or property interest Defendants interfered with.  [#24 at 7].  Second, to the extent that Mr. Luck predicates his due process claim on his transfer to Unit-2, he fails to allege that this transfer subjects him to atypical and significant hardships.  [*Id.*].  Lastly, Mr. Luck fails to identify which Defendants deprived him of due process.  [*Id.*].  For these reasons, Defendants argue they are entitled to qualified immunity for want of a constitutional violation.  [*Id.* at 8–9].

A liberal interpretation of the Amended Complaint reveals that Plaintiff predicates his Fourteenth Amendment claim on his transfer to Unit-2. This court, however, agrees with Defendants that, despite this allegation, the Amended Complaint fails to allege what process Defendants owed Plaintiff or which Defendants denied Plaintiff that process. *See generally* [#6]. To survive a motion to dismiss, Mr. Luck's § 1983 claims must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156–57 (10th Cir. 2001).

In his Response to the Partial Motion to Dismiss, Plaintiff argues for the first time that Defendants Grimes, Yates, Corbin, Butcher, and Toews "violated [his] procedural due process rights to liberty interest, by placing him in segregation for reasons unknown." [#37 at ¶ 10]. However, the Amended Complaint does not refer to Unit-2 as being segregation, and, in fact, alleges that Defendant Yates informed Plaintiff that his transfer to Unit-2 was due to his "pending COPD charge, and too many crons." [#6 at ¶ 5]. Similarly, Mr. Luck's Response states that Defendants violated LCF protocol when they placed him in Unit-2 "by not allowing him a proper classification hearing pursuant to Administrative Regulation 600-01." [#37 at ¶ 11].

Aside from being raised for the first time in his Response, Plaintiff also fails to identify which Defendants violated LCF protocol and deprived him of a proper classification hearing. "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). As explained, the complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham*, 265 F.3d at 1156–57. Indeed, the complaint

must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1250. Thus, this court concludes that Defendants are entitled to qualified immunity because Plaintiff fails to allege a due process violation, and respectfully RECOMMENDS that Plaintiff's due process claim be DISMISSED.

## IV. The Lopez Motion to Dismiss

The Eighth Amendment protects prisoners from substantial risks of violence at the hands of other inmates. *See Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008) (citations omitted). "To state an Eighth Amendment claim for failure to protect, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Savage v. Fallin*, 663 F. App'x 588, 592 (10th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Further, Mr. Luck must show that Defendants knew of the substantial risk of serious harm yet disregarded that risk. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).

Defendant Lopez moves to dismiss Plaintiff's Eighth Amendment failure to protect claim, because Plaintiff fails to allege Defendant Lopez's deliberate indifference to a substantial risk of serious harm. [#40 at 4]. Specifically, Plaintiff fails to proffer sufficient factual allegations to support his conclusory statement that Defendant Lopez "had knowledge of my custody issues and the imminent danger I was in." [#6 at 12]. Accordingly, Defendant Lopez claims he is entitled to qualified immunity. [#40 at 5]. I respectfully agree.

Here, there is no denying that the Amended Complaint sufficiently alleges a substantial risk of serious harm—Plaintiff was assaulted by another inmate upon his transfer to Unit-2. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). However, to establish that Defendant Lopez disregarded this substantial risk of serious harm, Mr. Luck must allege that Defendant Lopez was

12

both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires more than mere negligence." *Sealock v. Colo.*, 218 F.3d 1205, 1211 (10th Cir. 2000). Unlike the other named Defendants, the Amended Complaint is devoid of any allegation that Plaintiff explicitly informed Defendant Lopez of his concerns with being transferred to Unit-2, and that Defendant Lopez ordered the transfer despite this knowledge. Rather, the only allegation concerning Defendant Lopez is an unsubstantiated allegation that Defendant Lopez was aware of the risk of harm. *See Robbins*, 519 F.3d at 1247 (explaining that a complaint must contain allegations that nudge a claim from conceivable to plausible). This court concludes that this allegation alone is insufficient to maintain an Eighth Amendment failure to protect claim against Defendant Lopez, and that Defendant Lopez is entitled to qualified immunity for this reason. Accordingly, I respectfully RECOMMEND that Plaintiff's Eighth Amendment failure to protect claim be DISMISSED as to Defendant Lopez only.

## CONCLUSION

Therefore, for the reasons stated herein, I respectfully **RECOMMEND** that:

(1) Defendants' Motion for Partial Dismissal of Amended Complaint (Doc # 6) [#24] be **GRANTED**, and that Plaintiff's First Amendment retaliation, Fourth (i.e., Eighth) Amendment excessive force, and Fourteenth Amendment procedural due process claims be **DISMISSED** against all Defendants; and

(2) Defendant Lopez's Combined Motion to Join CDOC Defendants' Motion for Partial Dismissal of Amended Complaint (Doc #24) and Motion to Dismiss Eighth Amendment Claim [#40] be **GRANTED**, and Plaintiff's Eighth Amendment failure to protect claim be **DISMISSED** as to Defendant Lopez only, leaving an Eighth Amendment failure to protect claim

as to the remaining named Defendants Sergeant Smith, CO Brummund, Lieutenant Grimes, Captain Yates, Captain Martinez, CO Nevins, CO Forestall, Sergeant Corbin, Mental Health Provider Toews, and Major Butcher.[5]

**IT IS FURTHER ORDERED** that:

(1)  A copy of this Recommendation is to be sent to the following:

CASE MANAGER FOR
DAVID LUCK #162979
LIMON CORRECTIONAL FACILITY (LCF)
49030 STATE HIGHWAY 71
LIMON, CO 80826

DATED:  September 8, 2017

BY THE COURT:

s/Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).